IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM ROUSER,

    Plaintiff,                    No. CIV S-93-0767 LKK GGH P

    vs.

THEO WHITE, et al.,

    Defendants.                O R D E R

_____/

    Plaintiff William Rouser has brought suit against the defendants, all of whom are employees of the California Department of Corrections and Rehabilitation ("CDCR"), alleging they violated his civil rights by denying him his right to practice his religion while incarcerated. Plaintiff's Second Amended Complaint raises claims for violations of: 1) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000 et seq.; 2) the Free Exercise and Establishment Clauses of the First Amendment of the U.S. Constitution; 3) the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution; 4) the Free Exercise and Establishment Clauses of

1

the California Constitution (Art. I, sec. 4); and 5) the Equal Protection Clause of the California Constitution (Art. I, sec. 7).

Pending before the court is defendants' motion to dismiss plaintiff's federal and California state Establishment Clause claims (counts 3 and 6, respectively ).  For the reasons explained below, the motion is denied.

## I. FACTUAL ALLEGATIONS[1]

Plaintiff is an adherent of the Wiccan religious faith who seeks to practice his religion while incarcerated.  SAC ¶¶ 15.  The complaint alleges that the use of various religious articles and the ability to conduct group worship under the guidance of a spiritual leader are central to the practice of plaintiff's religious beliefs.  SAC ¶¶ 16-17.  According to the complaint, the plaintiff, as a prisoner of the state, has been harassed and discriminated against due to his adherence to Wicca.  SAC ¶¶ 19-20.  Defendants' alleged discrimination has taken many forms, including denying plaintiff access to his religious articles (such as altars, wands, incense, tarot cards, and the Wiccan Bible) and denying plaintiff the ability to conduct group worship under the guidance of a spiritual leader, while allowing such access to other prisoners who adhere to one of the five religions

---

[1] Allegations are taken from plaintiff's Second Amended Complaint filed on June 27, 2008, unless otherwise noted.

1 outlined in CDCR's Departmental Operations Manual ("DOM").[2]  SAC
2 ¶¶ 18, 19, 24, 25, 27, 30, 32, 33, 56-59.  In part, CDCR's DOM
3 identifies that the prisons may obtain qualified chaplains from
4 five religious categories: Muslim, Jewish, Catholic, Protestant,
5 and "Native American."  See DOM § 101060.5. Plaintiff challenges
6 the alleged institutional preference toward these denominations
7 on the grounds that the preference goes beyond the employment of
8 chaplains and influences other decisions regarding religion.
9 　　　The plaintiff's complaint was initially filed in 1993.  The
10 parties settled in November, 1997.  The terms of the settlement
11 provided, in part, that plaintiff would have access to the Wiccan
12 Bible and other religious materials, even while housed in a
13 Security Housing Unit or Administrative Segregation, consistent

---

[2] Defendants request the court take judicial notice of CDCR's Departmental Operations Manuals ("DOM") sections 101060.1, 101060.2, 101060.4.  This manual describes the policies regarding CDCR's efforts to facilitate inmates religious and spiritual welfare.  Defendants have provided a copy of the manual to the Court as Exhibit A in support of defendant's Motion to Dismiss Count 3 of the Second Amended Complaint.
　　　A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably questioned. Fed. R. Evid. 201(b).  A court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information."  Fed. R. Evid. 210(d).
　　　Here, the DOM is a public document, and therefore the court is able to accurately and readily determine its contents. Defendants have complied with Federal Rule of Evidence 201(d) by requesting judicial notice and supplying the court with a copy of the applicable sections of the DOM.
　　　Therefore, the court takes judicial notice of CDCR's DOM sections 101060.1, 101060.2, and 101060.4.

1 with policies and procedures regulating inmate access to
2 religious articles.  SAC ¶¶ 29(a)-(d).  Additionally, the
3 settlement agreed to permit a volunteer Wiccan spiritual advisor
4 to conduct Wiccan services.  SAC ¶ 29(g).  In 2003, plaintiff
5 notified the court that defendants were not honoring the terms of
6 the settlement.

7 The case was reopened, although plaintiff's prior counsel
8 withdrew from representation.  In 2006, plaintiff's substituted
9 counsel also withdrew.  Proceeding *pro se*, plaintiff filed an
10 amended complaint on January 30, 2006, which supplemented his
11 February 12, 1997 complaint.  Plaintiff, with the assistance of
12 counsel, filed a second amended complaint on June 30, 2008.

13 Pending before the court is defendants Tilton and Yates'
14 motion to dismiss the Establishment Clause violations embodied in
15 count three (brought under the U.S. Constitution) and six (under
16 the California Constitution) of the Second Amended Complaint.

## II. STANDARDS

**A.  Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise, by motion, a defense that the court lacks "jurisdiction over the subject matter" of a claim. Fed. R. Civ. P. 12(b)(1). As "the federal courts are courts of limited jurisdiction," the party seeking to invoke the court's jurisdiction bears the burden of establishing its existence. <u>Kokkonen v. Guardian Life Ins. Co of Am.</u>, 511 U.S. 375, 377 (1994) (citations omitted); <u>Stock West,</u>

Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). Where the attack is facial, as in this case, the court takes the allegations in the complaint as true. Bollard v. Cal. Province of the Soc'y of Jesus, 196 F.3d 940, 944-945 (9th Cir. 1999). In contrast, when the motion constitutes a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publ'g Co. v. Gen. tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

**B.   Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a

1  right to relief above the speculative level." Id. at 1964-65.

2  The Supreme Court recently held that Federal Rule of Civil
3  Procedure 8(a)(2) requires a "showing" that the plaintiff is
4  entitled to relief, "rather than a blanket assertion" of
5  entitlement to relief. Id. at 1965 n.3. Though such assertions
6  may provide a defendant with the requisite "fair notice" of the
7  nature of a plaintiff's claim, the Court opined that only factual
8  allegations can clarify the "grounds" on which that claim rests.
9  Id. "The pleading must contain something more. . . than . . . a
10 statement of facts that merely creates a suspicion [of] a legally
11 cognizable right of action." Id. at 1965, quoting 5 C. Wright &
12 A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d
13 ed. 2004).³

14 On a motion to dismiss, the allegations of the complaint
15 must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322
16 (1972). The court is bound to give the plaintiff the benefit of
17 every reasonable inference to be drawn from the "well-pleaded"
18 allegations of the complaint. See Retail Clerks Int'l Ass'n v.
19 Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the
20 complaint is construed favorably to the pleader. See Scheuer v.
21 Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by
22 Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the

---

³ The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

6

1  court does not accept as true unreasonable inferences or
2  conclusory legal allegations cast in the form of factual
3  allegations.  <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th
4  Cir. 1981).

### III. ANALYSIS

6  In his complaint, the plaintiff alleges that the defendants
7  violated the Establishment Clauses of the United States and
8  California Constitutions by discriminating against the Wiccan
9  religion and creating denominational preferences towards other
10 religions.  Defendants have moved to dismiss the plaintiff's
11 third and sixth claims on the grounds that the plaintiff lacks
12 standing and that the doctrine of religious neutrality is
13 inapplicable in the prison context.  As explained below, the
14 court does not agree.

**A.  Standing**

16 Defendants first move to dismiss plaintiff's Establishment
17 Clause claims on the basis that the court lacks subject matter
18 jurisdiction, because the plaintiff has not alleged the elements
19 of standing. Specifically, defendants contend that plaintiff has
20 failed to allege a personal injury fairly traceable to the
21 actions of the defendants.

**1.  Article III Standing**

23 Drawing every inference in favor of the plaintiff, it
24 appears the complaint alleges that the defendants violated his
25 rights under the Establishment Clause of the First Amendment.
26 Plaintiff alleges that defendants' actions exhibited a

7

"preference" toward the religions outlined in the DOM, which may be read to allege that the defendants' discriminated against the plaintiff's Wiccan religion. See SAC ¶¶ 18, 19, 24, 25, 27, 30, 32, 33-35, 38, 56-59.

Defendants' motion to dismiss centers on the contention that CDCR may employ chaplains without violating the Establishment Clause. This appears to overlook the crux of the plaintiff's Establishment Clause claims, which seek to challenge CDCR's institutional preferences with regard to religion as discriminatory and violative of the Establishment Clause. It is plaintiff's injury with regards to these allegations that is relevant in considering his standing.

To establish standing, the plaintiff must show "(1)that he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of Earth, Inc. V. Laidlaw Environmental Services, 528 U.S. 167, 180-181 (2000); citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

However, standing to challenge a state action under the Establishment Clause, unlike the Free Exercise Clause, does not require proof that particular religious freedoms were infringed. School District of Abington Township v. Schempp, 374 U.S. 203, 224 n.9 (1963). Rather, a plaintiff has standing upon the

allegation that they have been "directly affected by the laws and practices against which their complaints are directed," id., and when they have a spiritual stake in the First Amendment values sufficient to raise issues concerning the Establishment Clause. Association of Data Processing Serv. Orgs, Inc. V. Camp, 397 U.S. 150, 154 (1970).

The concept of a "concrete" injury is particularly elusive in the Establishment context. Vasquez v. Los Angeles County, 487 F.3d 1246, 1250 (9th Cir. 2007). This is because an Establishment Clause plaintiff does not generally suffer any physical injury or pecuniary loss. Id.; see also Suhre v. Haywood County, 131 F.3d 1083, 1086 (4th Cir. 1997) (the court reasoned that the injury is the effect that the alleged establishment of religion has on a plaintiffs "spiritual, value laden beliefs"). Thus, while intangible injuries suffice to make an Establishment Clause claim justiciable, a plaintiff must allege such an injury which he has personally suffered as a consequence of the alleged constitutional violation. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 486 (1982).[4]

In his Second Amended Complaint, plaintiff alleges a direct

---

[4] Contrary to defendants' assertion, the court in Vasquez explained that "a standing rule requiring plaintiffs to show affirmative avoidance would impose too onerous a burden upon those seeking to challenge governmental action under the Establishment Clause." 487 F.3d at 1252. Thus, the Ninth Circuit has not adopted a rule that requires the plaintiff to show that the state action at issue has caused him to alter his behavior.

injury, in that defendants "have violated the prohibition on governmental acts or undertakings respecting an establishment or religion by favoring particular religious denominations over plaintiff's, as well as disfavoring plaintiff's religion," by denying plaintiff access to his religious articles, group worship, and spiritual leadership, while affording inmates of other faiths access to their religious articles and spiritual leaders. SAC ¶¶ 56-58. Hence, plaintiff as a follower of Wicca alleges sufficiently that defendants have favored the five religions outlined in the CDCR DOM, while repeatedly denying plaintiff the ability to practice his religion.

Further, plaintiff's second amended complaint alleges that "as a direct and proximate result of defendants' ongoing wrongful conduct, as herein alleged, plaintiff suffered, and continues to suffer, severe emotional distress, humiliation. . .among other injuries." SAC ¶ 59. Thus, plaintiff sufficiently alleges that his injury, the suppression of his religion and the preference toward the five religions in the CDCR's DOM, is fairly traceable to the actions of the defendant. Lastly, it is uncontested that plaintiff's injury, the suppression of his religion and the state's endorsement of five other religions, would be redressed by a favorable decision by this court within the meaning of <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).

In sum, plaintiff alleges that he is a follower of Wicca and that his religion is being discriminated against and suppressed while other religions outlined in CDCR's DOM have been

10

accommodated. This suffices to state a claim to relief that is plausible on its face, as well as provide defendants adequate notice of the nature of the claim. See Twombly, 127 S. Ct. at 1974. Accordingly, plaintiffs' allegations suffice to show that he has standing to bring his Establishment Clause claims.

### 2.   Prudential Concerns

Defendants also call to the court's attention that a similar case is proceeding in the Northern District of California, McCollum v. CDCR, No. C04-3339 CRB, and request a stay of the instant case. The power to stay proceedings in the interest of judicial economy is an inherent power left to the discretion of the court. Landis v. North Am. Co., 299 U.S. 248, 254 (1936). The party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." Id. at 255. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id.

In the present case, defendants have not offered any reason why the resolution of this case will present a hardship or inequity. Additionally, it is plausible that a stay would work damage on the plaintiff who would be required to stand aside until the resolution of McCollum v. CDCR. Given the limited information regarding the Northern District litigation, it is difficult for this court to make any determinations regarding the

11

best interests of the parties or the court.[5]  Hence, the court declines to stay the case pending the resolution of McCollum.

**B.  Establishment Clause**

In their motion, defendants contend that plaintiff's Establishment Clause claims fail as a matter of law, because federal law permits corrections facilities to take affirmative acts to accommodate the religious practice of inmates.

As a preliminary matter, both parties agree that resolution of the federal Establishment Clause claim necessarily disposes of the state claim as well.  Article 1, section 4 of the California Constitution "coincides with the intent and purpose of the First Amendment establishment clause" and the claims are therefore analyzed under the same standard.  East Bay Asian Local Development Corp. v. State of California, 24 Cal.4th 693, 718 (2000).

The First Amendment of the United States Constitution proscribes, in part, any law "respecting an establishment of religion."  In its evaluation of the contours of the Establishment Clause, the Supreme Court has repeatedly determined that prison inmates retain the protections afforded them by the First Amendment.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), superseded on other grounds by statute, Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000 et seq., as recognized in Hart v. CSP-Solano, 2005 U.S. Dist. LEXIS 20057

---

[5] The defendants have not asked the court to take judicial notice of any orders that have been issued in McCollum v. CDCR.

(2005). As the Supreme Court emphasized,

> [T]hough his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country.

Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974). Among these constitutional protections is the prisoner's "substantial religious freedom." Id. This right delineates the intrinsic limit of the state's authority over its inmates; put plainly, "prison officials are not now such masters of their own domain as to be free of the restraints of constitutional reasonability." Gilmore v. Lynch, 319 F. Supp. 105, 108 (N.D. Cal. 1970), aff'd by Younger v. Gilmore, 404 U.S. 15 (1971).

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244 (1982). When the state action facially shows a preference for one religion over others, it must be analyzed under strict scrutiny.[6] Id.; see also Hernandez v. Commissioner, 490 U.S. 680, 695 (1989). In Larson, the Court held that a Minnesota law that exempted religious institutions that received half of their financial support from member's contributions was unconstitutional, because

---

[6] Contrary to both parties' assertions, the classic three-prong test derived from Lemon v. Kurtzman, 403 U.S. 602 (1971), is only applicable when government actions or laws are facially neutral and make no denominational preference among religions. See Hernandez v. Commissioner, 490 U.S. 680, 695 (1989). That is not the case alleged by plaintiff.

13

it imposed denominational preferences on larger churches. 456 U.S. 228 (1982). Similarly, in Board of Education of Kiryas Joel Village School District v. Grumet, 512 U.S. 687 (1994), a New York state law that created a separate school district for a Hasidic Jewish community was held to be an unconstitutional preference for one religion over others.

Defendants argue that the principle of neutrality is not applicable in the prison context because the very accommodation of religion over non-religion precludes neutrality. While the argument raises interesting and difficult questions, this court need not resolve them. Put directly, the court is aware of no binding authority that would preclude the application of the neutrality principle, articulated in Larson, in the prison context. While the court acknowledges the unique considerations inherent in the operation of the penal system, when the state provides religious accommodations to people, prisoners or not, it appears to the court that it must do so in a manner that is neutral. Kiryas Joel, 512 U.S. at 705-707 ("whatever the limitations of permissible legislative accommodation may be, it is clear that neutrality as among religions must be honored").

The application of the neutrality principle in the prison setting appears to comport with the Supreme Court's interpretation of RLUIPA. In Cutter v. Wilkinson, 544 U.S. 709, 723-24 (2005), the Court held that RLUIPA itself did not violate the Establishment Clause, in part because it "does not differentiate among bona fide faiths," relying on Kiryas Joel.

14

1 The Court further explained that in "properly applying RLUIPA, .
2 . . [courts] must be satisfied that the Act's prescriptions are
3 and will be administered neutrally among different faiths. . . ."
4 Id. at 720 (citing Kiryas Joel, 512 U.S. at 687).  Thus, because
5 RLUIPA's constitutionality depends on its neutral application,
6 the defendants' position that the neutrality principle is
7 unworkable in the corrections context appears particularly
8 disingenuous.

9     Defendants cite to a line of cases which indicate that the
10 paid employment of prison chaplains does not violate the
11 Establishment Clause of the First Amendment of the United States.
12 See Cutter, 544 U.S. at 725-26; School District of Abington
13 Township v. Schempp,374 U.S. 203 (1963); Duffy v. California
14 State Personnel Board, 232 Cal. App.3d 1 (1991).  These cases,
15 however, do nothing to call into question the use of Larson,
16 Kiryas Joel, or their progeny, in the prison context.  Rather,
17 the cited cases stand for the proposition that the burdens on the
18 fundamental and constitutionally recognized right of prisoners to
19 exercise their religious beliefs may be offset by providing
20 chaplains, without violating the Establishment Clause.  These
21 cases do not abrogate the Larson rule that all governmental
22 agencies must practice neutrality in the manner in which they
23 accommodate religions.

24     In the present case, plaintiff alleges that defendants "have
25 set the five state-sanctioned religions above Wicca, and have
26 withheld or granted rights based on wither an inmate belongs to

1  one of the approved religions." Plaintiff's Opposition to
2  Defendants' Motion to Dismiss at 4; see also SAC ¶¶ 56-58.
3  Further, CDCR's Departmental Operations Manual ("DOM") provides
4  that "[t]o facilitate inmate religious practices, wardens may
5  obtain qualified persons from these categories (1) Muslim,
6  Jewish, Catholic, Protestant chaplains and Native American
7  Spiritual Leader on a full-time, part-time, or intermittent
8  basis; (2) volunteer non-paid community clergy and/or religious
9  or spiritual leader representatives; and (3) inmates."
10 Defendants' Motion to Dismiss at 3.
11     On its face, the CDCR's DOM establishes denominational
12 preferences toward the five categories of religion outlined
13 therein and is analogous to the preferential treatment in <u>Larson</u>
14 and <u>Kiryas Joel</u>, both of which were held unconstitutional.  Thus,
15 accepting plaintiff's allegations as true, Mr. Rouser has raised
16 plausible grounds upon which he may be entitled to relief.
17 Accordingly, the court denies the motion to dismiss plaintiff's
18 Complaint for failure to state an Establishment Clause claim.

### IV. CONCLUSION

The motion to dismiss is denied.

IT IS SO ORDERED.

DATED: September 15, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

16