1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM ROUSER,

11        Plaintiff,              No. CIV S-93-0767 LKK GGH P

12      vs.

13   THEO WHITE, et al.,

14        Defendants.                   O R D E R

15   _____/

16        Plaintiff is a prisoner proceeding with counsel bringing

17   claims arising out of the alleged failure of prison officials to

18   accommodate the practice of his religion. At issue here is

19   plaintiff's most recent motion for a preliminary injunction

20   enjoining various officials.  The motion seeks an order allowing

21   plaintiff to obtain and maintain certain articles, which he

22   characterizes as religious, and to satisfy certain requirements

23   with respect to his religious services. For the reasons stated

24   below, plaintiff's motion is granted as to most of the relief he

25   seeks.

26   ////

1

## I. BACKGROUND

On May 7, 1993, plaintiff filed his original complaint seeking damages and injunctive relief from, <u>inter alia</u>, defendant Theo White ("White"), warden of California State Prison - Sacramento ("CSP-Sac"), and defendant James H. Gomez ("Gomez"), former director of the California Department of Corrections and Rehabilitation ("CDCR"), under several theories of liability alleging their infringement of his religious practice. On December 5, 1997, the court dismissed the case pursuant to the parties' private settlement. On March 23, 2004, the court reopened the case pursuant to the Prison Litigation Reform Act, which provides that the only way for courts to enforce private settlement agreements is to reinstate civil proceedings. 18 U.S.C. § 3626(c)(2).

On January 30, 2006, plaintiff filed an amended complaint adding defendants and claims relating to his treatment at Mule Creek State Prison ("MCSP"). In June 2007, plaintiff was transferred to Pleasant Valley State Prison ("PVSP"). On September 23, 2008, plaintiff filed his third amended complaint, bringing claims against four defendants, White, Gomez, Matthew Cate ("Cate"), Secretary of CDCR, and James A. Yates ("Yates"), warden at PVSP. This complaint sued all defendants in their individual and official capacities, and plaintiff sought both damages and injunctive relief.

On May 14, 2009, this court granted in part and denied in part defendants' motion for summary judgment.  The motion was

denied insofar as plaintiff sought injunctive relief.
Specifically, the court concluded that "were the factfinder to
credit even some of plaintiff's evidence of the violations he has
suffered since 1992 in attempting to exercise his religious
rights, a factfinder could infer a pattern of Constitutional
violations sufficient to call into question the permanence of any
changes defendants have voluntarily made now." May 14, 2009
Order, Doc. 420, at 74. The court discusses the specific holdings
of this decision and the relevance of the holding below.

On December 10, 2009, this court granted plaintiff's motion
to supplement his complaint to include claims for conduct
occurring after he filed his Third Amended Complaint. Plaintiff
sought to add three defendants to his complaint. Plaintiff
alleges that defendant correctional counselors P. Ortiz ("Ortiz")
and B. Flores ("Flores") retaliated against his filing of
grievances and litigation of this case by placing plaintiff in
administrative segregation and then causing plaintiff to be
transferred from PVSP to California State Prison Los Angeles
County ("LAC"). Plaintiff also added defendant Brian Haws
("Haws"), warden of LAC.

## II. STANDARD OF REVIEW FOR FED. R. CIV. P. 65 MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy."
Winter v. Natural Resources Defense Council, Inc., ___ U.S. ___,
129 S. Ct. 365, 376 (2008) (internal citation omitted). When a
court considers whether to grant a motion for a preliminary

injunction, it balances "the competing claims of injury, . . . the effect on each party of the granting or withholding of the requested relief, . . . the public consequences in employing the extraordinary remedy of injunction," and plaintiff's likelihood of success. Id. at 374, 376-77 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). In order to succeed on a motion for a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 129 S. Ct. at 374.

An even more stringent standard is applied where mandatory, as opposed to prohibitory, preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "where a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." Martin v. International Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. See Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. Id.
////

### III. ANALYSIS

Rouser is a practicing Wiccan, who argues that defendants have infringed upon his ability to practice his religion. Plaintiff moves for a preliminary injunction against defendants Cate and Haws. Specifically, plaintiff argues that these defendants are violating his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Free Exercise and Establishment Clauses of the First Amendment, as incorporated through the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff seeks the following injunctive relief:

(1) that defendants allow Mr. Rouser to keep and maintain religious texts (including but not limited to A Witches' Bible Compleat (the "Wiccan Bible")), to the maximum extent allowed under CDCR policies and as applied to all inmates; this includes allowing Mr. Rouser to have his Wiccan Bible while he is in Administrative Segregation;

(2) that defendants allow Mr. Rouser to obtain group Wiccan items prior to Wiccan group services;

(3) that defendants cannot take and/or destroy Mr. Rouser's approved religious articles;

(4) that defendants provide a means for Mr. Rouser to order and receive religious items;

(5) that when Wiccan services are scheduled, defendants must allow Mr. Rouser to access the nature-based religious area for group services for the entire scheduled time, unless the Yard is

on modified program and no religious group is allowed to meet that day;

(6) that defendants grant Mr. Rouser access to a fire pit during religious services;

(7) that defendants provide Mr. Rouser an outdoor nature-based religious area, similar to the outdoor nature-based religious area at Pleasant Valley State Prison, in which Mr. Rouser may participate in Wiccan group services;

(8) that defendants cannot take unreasonable steps to interrupt Mr. Rouser's group services, including but not limited to blaring Christian music in the direction of Mr. Rouser's group services or turning on the sprinkler system during Mr. Rouser's group services; and

(9) that defendants announce Wiccan services to the same extent they announce services for the main stream faiths (i.e., Catholic, Protestant, Jewish, Muslim, and Native American).

Defendants oppose this motion on several grounds. First, defendants argue that the motion should be denied for several jurisdictional reasons. Second, defendants argue that the motion should be denied under the requirements to issue a preliminary injunction. The court will first dispose of defendants' jurisdictional concerns, and then turn to the preliminary injunction factors.

**A.   Whether the Court Has Jurisdiction to Issue a Preliminary Injunction.**

**1.   Whether Defendants Gomez's and Ortiz's**

**Interlocutory Appeal of this Court's Decision
Denying Qualified Immunity Bars this Court's
Ability to Issue a Preliminary Injunction.**

On May 14, 2009, this court denied defendants Gomez's and Ortiz's motion for summary judgment on the grounds that they are entitled to qualified immunity for violation of the Free Exercise Clause and the Equal Protection Clause. The court also denied defendants' motion on the grounds that they were entitled to qualified immunity for violation of the Establishment Clause, but only insofar as plaintiff was denied access to a Witches Bible while in administrative segregation. The court held that defendants were entitled to qualified immunity as to plaintiff's other claims for violation of the Establishment Clause. The court granted defendants' motion insofar as plaintiff's claim for violation of the Establishment Clause concerned his denial of Tarot cards, candles, incense, and access to a chapel. On June 12, 2009, defendants filed a notice of appeal as to the "denial of their motion for summary judgment asserting the defense of qualified immunity from all damages asserted in plaintiff's Third Amended Complaint . . . ." Defendants' Notice of Appeal, Doc. No. 421, at 2. Plaintiff seeks to enjoin defendants Cate and Haws, successors in office to defendants Gomez and White, the defendants who are appealing this court's decision on qualified immunity. Defendants argue that this court does not have jurisdiction to enter a preliminary injunction against Cate and Haws because their liability for injunctive relief is "necessarily intertwined with the question on appeal" and,

therefore, the court cannot grant a preliminary injunction.

As this court held in its December 10, 2009 order, "[i]nterlocutory appeal of denial of qualified immunity may deprive the district court of jurisdiction." December 10, 2009 Order at 8. Specifically, the court "is automatically divested of jurisdiction to proceed with trial pending appeal." Id. (quoting Shuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992)). Because qualified immunity is only immunity from damages, this court held that it "presently [only] lacks jurisdiction over the claims for damages against Gomez and White." The court continued to state that "[a]ppeal does not deprive the court of jurisdiction over other aspects of this case, including plaintiff's claims for injunctive relief and as to other defendants." December 10, 2009 Order at 9 (citing Plotkin v. Pacific Tel. & Tel. Co., 688 F.2d 1291 (9th Cir. 1982)).

Defendants argue that this court's reliance on Plotkin is misguided.[1] Specifically, defendants argue that "Plotkin holds that an appeal from an interlocutory order does not divest the court of jurisdiction to proceed with all 'other aspects' of the case, but divests the court of jurisdiction only as to those issues that do implicate issues on appeal." Opposition at 35. However, as this court explained in its previous order, Plotkin held that "an appeal from an interlocutory order does not stay

---

[1] Throughout this section defendants' refer to the court's analysis in the December 10, 2009 order as if these were arguments merely raised by plaintiffs.

the proceedings, as it is firmly established that an appeal from
an interlocutory order does not divest the trial court of
jurisdiction to continue with other phases of the case." Plotkin,
688 F.2d at 1293. Defendants contend that any matter that seems
somewhat related to the matter on appeal constitutes the same
"phase[] of the case." That is not so. For example, in Plotkin,
the Ninth Circuit held that the district court could entertain
defendant's motion for summary judgment while denial of
plaintiff's motion for a preliminary injunction was on appeal.
December 10, 2009 Order (citing Plotkin, 688 F.2d at 1293). The
subject matter of the two motions in Plotkin was virtually
identical. Specifically, the preliminary injunction was denied
because plaintiff failed to exhaust the available administrative
remedies, and the motion for summary judgment was granted for the
same reason. Plotkin, 688 F.2d at 1292. Nonetheless, the Ninth
Circuit held that the district court had jurisdiction over the
summary judgment motion while its order denying the preliminary
injunction order was on appeal. Clearly, the Ninth Circuit did
not hold that district courts lack jurisdiction only as to those
issues that do not implicate the issues raised in the appeal.

Here, the only similarity between the issues on appeal and
the issue at bar is the possibility that the Ninth Circuit would
adopt reasoning that could conflict with this court's
understanding of the constitutional and statutory requirements
concerning plaintiff's religious practice. As an initial matter,
defendants are mistaken to argue that if the Ninth Circuit

reverses this court's decision on qualified immunity that then Cate and Haws would necessarily be dismissed from the case. The appeal only concerns the extent to which White and Gomez are liable in their individual capacity for damages, and not in the official capacity for injunctive relief. Despite this difference, the ruling of the Ninth Circuit may only possibly effect this court's reasoning under the First and Fourteenth Amendments, and not under RLUIPA. For example, if the Ninth Circuit were to reverse this court's decision as to whether Gomez and White are entitled to qualified immunity on the grounds that the law was not clearly established, this decision would not effect Cate's and Haws' liability. First, Gomez and White would only be dismissed from the action because they are retired, and thereby no longer liable for injunctive relief. Cate and Haws, as active officials, remain liable for injunctive relief even if Gomez and White were entitled to qualified immunity. Second, it is not clear that Cate and Haws would even be entitled to such immunity where Gomez and White acted before this court issued orders concerning the constitutional and statutory requirements, and Cate and Haws allegedly infringed plaintiff's rights after the court described these requirements. The only possibility for the Ninth Circuit's decision on defendant's qualified immunity appeal to implicate the instant motion would be for the court of appeals to decide that this court was wrong as to whether a reasonable jury could conclude that Gomez and White violated the constitution. If the Ninth Circuit were to so decide, the proper

avenue for defendants would be to file a motion to reconsider an order granting a preliminary injunction based on those theories, and not to preemptively oppose a motion for a preliminary injunction on the grounds that there is a chance that the Ninth Circuit could resolve their appeal in a way that could implicate this order. As such, defendants' argument does not prevent the court from issuing a preliminary injunction.

> **2.  Whether this Court's Decision on Defendants' Motion to Dismiss Plaintiff's Claims of Retaliation Against Flores and Ortiz Bars the Court's Ability to Issue a Preliminary Injunction.**

Defendants also argue that the court lacks jurisdiction to issue injunctive relief as to the alleged retaliation claim against defendants Flores and Ortiz because they anticipated that this court will grant its motion to dismiss this claim for failure to exhaust administrative remedies. On March 10, 2010, this court denied defendant's motion to dismiss on this ground. Moreover, even if the court had granted the motion to dismiss, this argument is irrelevant in that Rouser is seeking to enjoin Cate and Haws, the officials responsible for his treatment at LAC, and not Ortiz and Flores, the officials at PVSP, plaintiff's previous place of institution. Accordingly, defendants' have not demonstrated this court's lack of jurisdiction for failure to exhaust a retaliation claim against Flores and Ortiz.

> **3.  Whether Plaintiff's Motion Is Moot.**

Defendants also argue that the court should not issue a preliminary injunction here because plaintiff's motion is moot.

Defendants seem to contend that their conduct at the correctional institutions where plaintiff was previously incarcerated should not bear on whether plaintiff is entitled to a preliminary injunction at the institution where he is currently incarcerated. In support of this argument, defendants refer to this court's previous order dismissing a preliminary injunction as moot where plaintiff sought to enjoin officials at Mule Creek State Prison, but was later transferred to PVSP.  This argument conflates two issues. While it is clear that plaintiff could not seek to enjoin officials at prisons where he is no longer incarcerated, evidence of conduct from those prisons is nonetheless relevant in deciding whether defendants are engaging in a pattern and practice of preventing plaintiff from practicing his religion. This is especially so where Cate, one of the defendants plaintiff seeks to enjoin, is secretary of the entire California Department of Corrections and Rehabilitation ("CDCR"). Because plaintiff does not seek to enjoin officers at his prior prisons, his motion is not moot. Evidence from the previous institutions, however, is relevant to plaintiff's claims and shall be considered when evaluating plaintiff's likelihood of success on the merits.

Given that the court concludes it has jurisdiction over plaintiff's motion for a preliminary injunction, I now turn to whether such an injunction should issue.

**B.   Whether Plaintiff Is Entitled to a Preliminary Injunction.**

**1.   Likelihood of Success on the Merits.**

**a.   Whether Plaintiff Has Demonstrated a Causal Connection Between the Actions of Defendants Haws and Cate and His Treatment at LAC.**

Defendants assert that plaintiff "has not shown any causal connection between the actions of Warden Haws and the alleged conduct of prison staff at CSP-Los Angeles County; . . ."[2] Opposition at 37. Defendants do not argue that plaintiff has not demonstrated such a connection between CDCR Secretary Cate and the alleged conduct at LAC, but because the reasoning is identical, and because the court decides that plaintiff has demonstrated such a connection, the court considers defendants' argument as if it sought to deny a connection between both defendants that plaintiff seeks to enjoin and the alleged conduct at LAC.

To succeed on a claim under 42 U.S.C. § 1983,[3] plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by

---

[2] The court construes defendants' argument as to causal connection as an argument under the likelihood of success element for a preliminary injunction even though defendants did not include this discussion under the likelihood of success on the merits section of their opposition. The reason for including it in this section is that if plaintiff has not sufficiently shown a causal connection, he would not be likely to succeed on the merits. This argument is not a jurisdictional bar to entry of an injunction, but rather goes to the strength of plaintiff's claims.

[3] The court notes that this analysis only applies to plaintiff's § 1983 claim, and not for his claim under RLUIPA.

13

the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 626, 632-33 (9th Cir. 1988) (internal citations omitted). The Ninth Circuit construes the second element to require that plaintiff show that a defendant deprived him "of a constitutional right, within the meaning of section 1983, [where] he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Id. at 633 (internal quotation omitted). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Id.

_____The Ninth Circuit applies a less stringent standard for causation where plaintiffs seek injunctive relief as opposed to damages. Id. Because the inquiry here is whether plaintiff is likely to succeed on the merits of his claim for an injunction, the court need only address whether he is likely to show sufficient causation for injunctive relief. The circuit's standard for injunctive relief is "whether the combined acts or omissions of the state officials responsible for operating the state's penal system created living conditions that violate the" constitution. Id. While this analysis "undeniably focuses on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have caused the constitutional deprivation," it nonetheless "is broader and more

generalized than when that same prisoner seeks damages for the harmful effects" of the constitutional violation. Id. Accordingly, in order to demonstrate that he is entitled to injunctive relief under § 1983, plaintiff need not demonstrate Cate's and Haws' personal participation in each allegedly unconstitutional act, as defendants contend, but rather that they are responsible for policies or practices that resulted in violations of plaintiff's First Amendment rights.

Plaintiff has clearly met this standard to the extent that he seeks injunctive relief for policies that burden his religious practice. While not completely clear from plaintiff's motion, it appears to the court that the injunctive relief that plaintiff is seeking under § 1983 only concerns "prison policies that prevent Mr. Rouser [from] access to group worship, religious articles, and a fire pit." Motion at 19. As the court reasoned in Rouse v. Washington State Dep't of Corrs., No. C08-5620 FDB, 2009 WL 1011623, at *4 (W.D. Wash. Apr. 15, 2009), "the proper defendant for injunctive relief regarding the implementation of a [CDCR] policy would be the Secretary of the [CDCR], [Cate] in his official capacity" or, to the extent that the policy is institution-specific, the warden of LAC, Haws in his official capacity. Id. These policies are discussed in greater depth below in the court's description of the scope of preliminary relief. Accordingly, plaintiff has met his burden of alleging a causal connection sufficient to entitle him to injunctive relief against Cate and Haws. The court addresses in the next section, whether

plaintiff is likely to succeed on these claims upon review of the evidence provided in support and in opposition to this motion.

> **b.   Whether Plaintiff Has Demonstrated That it Is Likely That Defendants Are Violating His Federal Constitutional and Statutory Rights.**

> **i.   Evidence Before April 2009**

As an initial matter, this court has already considered evidence provided by both parties as to whether defendants were engaging in a pattern and practice of violating his rights under RLUIPA and the Constitution by preventing him from practicing his faith as of May 14, 2009 in response to defendants' motion for summary judgment. The court need not discuss these facts in depth again. But, rather, suffice to say, these findings of fact also reveal that plaintiff is likely to succeed on the merits of his claims as of, at earliest, April 3, 2009, the date plaintiff submitted his opposition to defendants' motion for summary judgment.[4]

In particular, the claims for which plaintiff has a sufficient likelihood of success as to his entitlement to injunctive relief include the following:

---

[4] The court notes that this approach only considers admissible evidence. While inadmissible evidence may be considered when determining the likelihood of success on the merits, doing so here is not warranted. See Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984). Where discovery is complete as to actions occurring before April 3, 2009, plaintiff's likelihood of success is closely tied to the admissible evidence he can present at trial. However, the court will give some weight to inadmissible evidence for more recent occurrences in that the parties have not yet conducted discovery on those matters. See id.

(1) Defendants Cate and Yates substantially burdened plaintiff's religious exercise in violation of RLUIPA and of the Free Exercise Clause of the First Amendment by:

(a) Inhibiting plaintiff's timely receipt of religious articles through policies at PVSP surrounding the ordering and receipt of religious items from vendors;

(b) Inhibiting group worship by plaintiff and other Wiccans through, inter alia, restrictions on Wiccans' use of chapel space, failure to announce Wiccan group worship to the general population, prohibition of Wiccans' use of certain items, such as a fire pit, that are part of group worship, and a policy for use of lockers by religious groups that has resulted in plaintiff and other Wiccans being unable to access the items desired for group religious worship;[5]

(c) Inhibiting plaintiff from attending group worship approximate 46 times due to actions by the guards in failing to escort him to the outdoor area on time, requiring him to return to his cell early, or interrupting his worship; and

(d) Failing to retain a paid chaplain for plaintiff and other Wiccans at PVSP, in that only paid chaplains can approve religious order forms, retrieve orders from the mailroom, approve or deny grievances, access prison keys, and ensure inmates are released on time for services.

---

[5] Testimony from Lisa Morgenstern indicates that Wiccan practice is sufficiently individual that it is unlikely any article is required.  Nonetheless, there is no suggestion that the articles in question are not generally used in group worship.

(2) Defendants Gomez and White inhibited plaintiff's free exercise rights in violation of the First Amendment through:

(a) Preventing plaintiff from accessing Tarot cards, candles, incense, and a Witches Bible, which made the exercise of plaintiff's religion significantly more difficult; and

(b) Denying some grievances filed by plaintiff concerning his access to these items.

(3) Defendants violated the Establishment Clause of the First Amendment by:

(a) Promulgating the CDCR policy which allows wardens to hire chaplains only of "Muslim, Jewish, Catholic, Protestant . . . and Native American" faiths;

(b) Allowing Native American inmates to access a sweat lodge and fire pit at PVSP, while Wiccan inmates are not allowed access;

(c) Securing the locker containing Wiccan items at PVSP with a keyed lock where only the guards have access to the key, while the lockers for the Native American and Catholic items are secured with a combination lock of which Native American and Catholic inmates know the combination, and the locker containing Protestant items has no lock; and

(d) Rarely announcing Wiccan services to the general population, while frequently announcing Protestant, Catholic, and Muslim services.

(4) Defendants violated plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment by impeding his

1  practice of the Wiccan faith in ways that other religious

2  practitioners are not. In particular, the actions include those

3  described above of denial of a paid chaplain, denial of his

4  Witches Bible in Administrative Segregation in 1993, denial of

5  access to a firepit and sweat lodge, denial of access to a chapel

6  for a period of time, and policies regarding access to items from

7  third-party vendors, use of lockers by religious groups, and

8  announcements of religious services.

9                    ii.  **Evidence During and After April 2009**

10                        a.  **Evidence from PVSP**

11       Rouser ordered religious items from a vendor in early 2009.

12  Declaration of William Rouser in Support of Plaintiff's Motion

13  for a Preliminary Injunction ("Rouser's First Decl.") ¶ 113-15.

14  On April 14, 2009, Rouser was informed by prison officers that

15  the items had arrived, yet would be returned to the sender if he

16  did not have a copy of an official religious order request form.

17  Id. Because Rouser was not allowed to make religious copies, he

18  did not have the copy. Id. Accordingly, his order was returned to

19  the vendor. Id.

20       On or about June 2009, prison officers confiscated Rouser's

21  candle holders, even though these candle holders were previously

22  approved religious items. Id. at ¶ 117; Declaration of Tramaine

23  Hunter in Support of Plaintiff's Motion for Preliminary

24  Injunction ("Hunter Decl.") ¶ 9.

25       Twice in June 2009, prison officers released Rouser one hour

26  late for his two and a half hour religious service. Rouser's

First Decl. at 120. Other Wiccan inmates have testified to similar experiences. Declaration of James J. Burian in Support of Plaintiff's Motion for Preliminary Injunction ¶¶ 7-12; Hunter Decl. ¶¶ 5, 8; Declaration of Douglass Hysell in Support of Plaintiff's Motion for Preliminary Injunction ("Hysell's First Decl.") ¶¶ 10-11; Second Declaration of Douglass Hysell in Support of Plaintiff's Motion for Preliminary Injunction ("Hysell's Second Decl.") ¶¶ 6-8. Rouser has presented evidence that at around the same time Muslim inmates were allowed to have services fairly on time. Declaration of Kajauna Irvin in Support of Motion for Preliminary Injunction ¶ 28.

On or about June 21, 2009, the sprinklers went off in the nature based religious area for about five minutes while Wiccan inmates were celebrating Sabbat. Rouser's First Decl. ¶ 125; Hunter Decl. ¶ 10. Defendants have presented evidence that the sprinklers would have only gone off at that time if someone went to the sprinkler controls, turned them on, and remained there for five minutes, and then turned them off or if there was a malfunction. Lynch-Auniga Decl. ¶ 5. Defendants also claim that if a person were at the sprinkler controls, he would have been visible from the nature based religious area. Id.

Rouser was placed in Administrative Segregation on July 2, 2009, yet did not receive his Wiccan bible until July 24, 2009. Id. at ¶ 128. Others in Administrative Segregation were promptly given Christian Bibles and Qurans. Id. at ¶ 129. See also Declaration of Claude Powell in Support of Plaintiff's Motion for

Preliminary Injunction ¶ 9 ("After being placed in Administrative Segregation [in April of 2009], I received my personal belongings and my Christian Bible. I saw a property officer going to the cells passing out Christian Bibles and Qurans."). Rouser has also presented some evidence that prison officers have gone through and thrown out his personal items including Rouser's legal documents and religious items. Declaration of Rickey Adams in Support of Motion for Preliminary Injunction ¶¶ 5-8; Declaration of Marcus Barnhardt in Support of Motion for Preliminary Injunction ¶¶ 8-9.

### b.   Evidence from LAC[6]

On August 7, 2009, plaintiff was transferred to LAC. Rouser's First Decl. ¶ 130. Rouser was informed by prison officers at the time of his transfer that there is no religious program for Wiccans at LAC. Id.

On August 27, 2009, the Muslim Chaplain at LAC informed Rouser that a Wiccan volunteer chaplain, Lisa Morgenstern, volunteers at LAC. Second Declaration of William Rouser in Support of Motion for Summary Judgment ("Rouser's Second Decl.") ¶ 9. As of September 4, 2009, the Wiccans were not scheduled for group services, even though there are approximately thirty

---

[6] Rouser argues that his transfer to LAC was in retaliation for this litigation, which defendants deny. However, this argument is not relevant here where plaintiff does not seek injunctive relief prohibiting or requiring his transfer to different prisons. For this reason, the court does not consider the evidence offered in support of and in opposition to Rouser's claims of retaliation.

inmates interested in such services, and Wiccans do not have a locker of any kind to keep their religious items. Id. at ¶ 14; Rouser's First Decl. ¶ 131. Furthermore, there is no nature based religious area at LAC. Rouser's Second Decl. ¶¶ 15-16. Rouser has also been told by LAC officers that he cannot practice his religion unless he has a sponsor or a court order. Id. at ¶¶ 17-19.

Between November 9, 2009 and January 8, 2010, Rouser has only been released for services on three occasions. Third Declaration of William Rouser in Support of Plaintiff's Motion for Preliminary Injunction ("Rouser's Third Decl.") ¶ 4. Rouser was able to lead one service, but did not have access to all of the items necessary for such a service nor was he able to light candles and incense as necessary for the service. Id. at 6-7.[7] Rouser attempted to purchase these items, but his request was denied, as was his appeal of the denial. Id. at ¶ 8. Rouser was also not able to participate in the Yule service on December 23, 2009 because he was not released for the service. Id. at 12.

Native American inmates are released to outdoor areas for services at LAC on Saturday mornings. Id. at 11.

Defendants have presented some evidence that rather than contradicting Rouser's evidence, differently interprets the course of events. As to these arguments, Rouser has at least

---

[7] According to Ms. Morgenstern's testimony, Rouser is a magician, which the court takes to mean he is the Wiccan equivalent of a religious leader in more conventional faiths.

presented evidence from which a reasonable jury could conclude that his interpretation of the events is correct. The remaining evidence presented by defendants concerns the extent to which they are already in compliance with many elements of Rouser's proposed preliminary injunction. This evidence will be discussed in the following section.

Nonetheless, the evidence presented by Rouser at least shows that he is as likely to succeed on the merits of his claims of constitutional and RLUIPA violations at LAC as he was in May 2009, when this court denied defendants' motion for summary judgment on these claims. Moreover, plaintiff has presented evidence that strongly suggests that he is likely to succeed on the merits on his argument that defendants' treatment of him constitutes a continuing violation as opposed to individualized incidents. Rouser is similarly inhibited in the practice of his religion at different prisons and under the supervision of different prison officers. Thus, plaintiff has shown that he is likely to succeed on the merits of his claims under the Constitution and RLUIPA.

### c. Evidence Relating to Lisa Morgenstern's Testimony.

On March 3, 2010, this court held an evidentiary hearing concerning the experiences of Lisa Morgenstern, a Wiccan volunteer chaplain at LAC. In response to this testimony defendants filed an declaration of Chaplain A. Omeira,

characterized as Morgenstern's supervisor at LAC.[8] In turn, Rouser submitted an additional declaration in response. The parties have submitted numerous objections to each other's declarations. Initially, as discussed above, the evidentiary objections are of little weight. The Ninth Circuit has held that, "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984). The remaining objection is that of defendants who claim that significant sections of Rouser's declaration should be stricken because they are beyond the scope of Morgenstern's testimony.

Ultimately, however, this is a situation where most of the evidence provided in Morgenstern's testimony and the responsive declarations is beyond the scope of this motion. Plaintiff seeks specific enumerated relief. The court's inquiry is limited to plaintiff's likelihood of success on the merits insofar as he is likely to obtain such injunctive relief at trial. For example, plaintiff is not now seeking as preliminary injunctive relief the hiring a Wiccan chaplain. Nonetheless, a large part of Ms. Morgernstern's testimony and portions of the responsive declarations only concern this issue. Further, a significant portion of the relevant testimony is uncontested. For example,

---

[8] Precisely what this means is uncertain.  Clearly Omeira cannot supervise Ms. Morgenstern's performance of religious services.  Thus, the court assumes he is her supervisor in relation to administrative matters.

the parties agree that plaintiff does not have access to outdoor, nature-based religious practice at LAC. The remaining facts concern to what extent Wiccan practitioners are treated differently than members of other religions. While these facts may ultimately be relevant in determining the extent to which Rouser is entitled to damages, they are not pertinent here where (1) plaintiff has demonstrated a strong likelihood of success in proving at trial that defendants have in the past treated Wiccans less favorably than other faiths and (2) plaintiff seeks preliminary relief of equal treatment. Specifically, if defendants' treatment of Wiccan religious activity over the past few months is equal to that of other religious activity, it does not make moot his claims for injunctive relief. Voluntary cessation of unconstitutional behavior does not preclude an order. See Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). Accordingly, the court does not resolve these disputes as they have no or little bearing on the likelihood of plaintiff's success on the merits of his claims for injunctive relief.

## 2.   Irreparable Injury.

In order for the court to award a preliminary injunction, plaintiff must demonstrate that he is likely to suffer irreparable harm without preliminary relief. Winter v. Nat'l Res. Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 374 (2008). Here plaintiff seeks relief for alleged constitutional violations. Such violations generally constitute irreparable harm

because they "cannot be adequately remedied through damages." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th Cir. 2009) (interpreting Winter and quoting Nelson v. N.A.S.A., 530 F.3d 865, 881 (9th Cir. 2008); see also Mayweathers v. Newland, 258 F.3d 930, 938 (9th Cir. 2001) ("[I]nmates suffer irreparable injury when they are unable to attend religious services that are commanded by" their religion.). Inhibition of religious practice is a clear example of such constitutional injury that cannot be adequately remedied through damages. As such, to the extent that plaintiff is likely suffering or likely to suffer injuries arising from the inhibition of his religious practice, his injuries are irreparable. In other words, if "a trial on the merits shows that such [inhibition] violates [his] constitutional rights, [plaintiff] will have suffered irreparable injury." Stormans, Inc., 586 F.3d at 1138.

Defendants do not challenge whether constitutional violations constitute irreparable injuries. Rather, defendants argue that Rouser is unlikely to experience irreparable injury because defendants are already in compliance with most of the terms of his proposed preliminary injunction.[9] The court need not address the factual dispute between the parties as to defendants' current compliance with the proposed terms of the preliminary

_____

[9] Defendants also raise some arguments that more properly concern the scope of the preliminary injunction than whether plaintiff is likely to experience irreparable injury. These arguments will be addressed in the final section of this order addressing the scope of the injunction.

injunction. Specifically, the Supreme Court has held that voluntary cessation of allegedly illegal conduct by a defendant does not moot a plaintiff's claim for injunctive relief. Friends of the Earth, Inc., 528 U.S. at 189 (2000). Doing so would "leave the defendant free to return to his old ways." Id. (internal quotation omitted). Rather, a case does not become moot by a defendant's voluntary cessation of the allegedly illegal conduct unless the defendant satisfies the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again . . . ." Id. (internal quotation omitted).

While this reasoning concerns mootness, and not whether a plaintiff is entitled to a preliminary injunction, it is immediately relevant to defendant's argument. Specifically, plaintiff would be entitled to injunctive relief at trial even if defendants could demonstrate that at the time of trial they were not infringing the practice of his religion. Here, where the alleged conduct infringing Rouser's religious practice extends through decades, it would be nearly impossible for defendants to show that their conduct could not be expected to start up again. This is especially so where the court reopened the case due to defendants' alleged failure to comply with the terms of the settlement agreement. Similarly, because a preliminary injunction is only awarded where plaintiff has shown that he is likely to receive such a permanent injunction after trial, the same reasoning applies. Accordingly, even if Rouser's religion were

not currently being infringed by defendants, plaintiff's claim for injunctive relief has not become moot because defendants could resume their conduct at any time.  Furthermore, to the extent that defendant is actually currently in compliance with the terms of plaintiff's proposed preliminary injunction, plaintiff's burden is merely to show that the voluntary cessation does not demonstrate assurance of revival of the conduct.

### 3.   Balance of Hardships and Public Interest.

Defendants do not make any arguments as to the balance of hardships or the public interest. Suffice to say, the court is persuaded that the balance of hardship tips sharply in favor of plaintiff to the extent that he is unable to practice his religion and allowing inmates to practice religion while incarcerated is clearly within the public interest in that Congress specifically passed the RLUIPA to serve such a purpose.

### C.   Scope of Preliminary Injunction.

The Prison Litigation Reform Act ("PLRA") allows courts to enter an order for preliminary injunctive relief. 18 U.S.C. § 3626(a)(2). This relief, however, "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." Id. Courts are also instructed to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." Id. Defendants similarly do not raise any specific concerns with whether plaintiff's proposed preliminary injunctive relief

conforms with PLRA. Nonetheless, it seems to the court that the relief described below is directly responsive to specific conduct of defendants, and conforms with these requirements. For example, plaintiff has provided evidence that defendants have prevented him from practicing his religion by taking his religious items and plaintiff seeks to enjoin defendants from taking these items. Further, because defendants have presented no evidence as to how any of this narrowly drawn relief would have an adverse impact on public safety or the operation of a criminal justice system and because the court is not otherwise aware of the possibility of this relief causing such an adverse impact, this relief is proper under the PLRA.

The relief the court grants results from institutional policies and practices. Specifically, Rouser's claims concerning his religious articles are the result of policies and practices concerning Rouser's ability to maintain possession of his religious articles and to obtain new articles. Similarly, Rouser's claims concerning his access to group worship, with respect to location and announcement, result from policies that prohibit access to a nature-based religious area and a fire pit at LAC and the administrative difficulties in announcing Wiccan services because LAC does not have a paid Wiccan chaplain.

To this extent, the court orders the following preliminary injunctive relief:

(1) that defendants allow Mr. Rouser to keep and maintain religious texts (including but not limited to A Witches' Bible

Compleat (the "Wiccan Bible")), to the maximum extent allowed under CDCR policies and as applied to all inmates; this includes allowing Mr. Rouser to have his Wiccan Bible while he is in Administrative Segregation;

(2) that defendants allow Mr. Rouser to obtain the group Wiccan items prior to Wiccan group services;

(3) that defendants cannot take and/or destroy Mr. Rouser's approved religious articles;

(4) that defendants provide a means for Mr. Rouser to order and receive religious items;

(5) that defendants announce Wiccan services to the same extent they announce services for the mainstream faiths (i.e., Catholic, Protestant, Jewish, Muslim, and Native American).

(6) that when Wiccan services are scheduled, defendants must allow Mr. Rouser to access the outdoor, nature-based religious area at LAC for group services for the entire scheduled time, unless the Yard is on modified program and no religious group is allowed to meet that day; and

(7) that defendants grant Mr. Rouser access to the fire pit adjacent to the Native American sweat lodge during religious services.[10] The parties represented at the hearing on this motion

_____

[10] Defendants argue that Rouser is not entitled to this relief because "Rouser did not exhaust his claim for a fire pit prior to commencing this action." Opposition at 42. To the extent that defendants are arguing that Rouser need to have exhausted his claim for access to a fire pit before he filed his original complaint, such an argument is not grounded. See Order Denying Motion to Dismiss, Dkt. No. 501. To the extent that defendants are arguing that the claim for access to a fire pit was not

that practitioners of Native American faiths have access to a sweat lodge. Outside of this sweat lodge is a area where rocks are heated by fire to be moved into the sweat lodge. Plaintiff stated that access to this fire pit would be sufficient. Defendant stated that it was unsure whether the use of the fire pit by Rouser would desecrate the site, but presented no evidence one way or the other on this issue. Based on the evidence before it, the court holds that Rouser is entitled to use this fire pit during group services because (1) it is narrowly drawn with respect to the constitutional violations described above and (2) defendants have presented no evidence that doing so would have an adverse impact on public safety or the operation of a criminal justice system.

The court nonetheless declines to order defendants to construct an outdoor nature-based religious area, similar to the outdoor nature-based religious area at PVSP because plaintiff has not provided sufficient evidence to demonstrate that the nature-based religious area at LAC is insufficient. Rather, plaintiff has only argued that he has not been allowed to access this area. The court also declines to grant plaintiff's request that the court enjoin defendants from taking unreasonable steps to

---

exhausted before filing of the Fourth Amended Complaint, the court notes that G. Duran, Correctional Counselor II, has declared that Rouser has filed two grievances requesting access to the fire pit. Declaration of G. Duran, ¶ 6. The first was filed on March 5, 2009 and the second was filed on April 7, 2009. Defendants have not made any arguments that these claims were not properly appealed through the administrative system.

interrupt Mr. Rouser's group services, including but not limited to blaring Christian music in the direction of Mr. Rouser's group services or turning on the sprinkler system during Mr. Rouser's group services because plaintiff has not demonstrated that these actions were the result of CDCR or LAC policy.

**IV. CONCLUSION**

For the foregoing reasons, the court orders that plaintiff's motion for a preliminary injunction, Dkt. No. 425, is GRANTED as to the relief described above.

Defendants are hereby ordered as follows,

(1)  that defendants allow Mr. Rouser to keep and maintain religious texts (including but not limited to A Witches' Bible Compleat (the "Wiccan Bible")), to the maximum extent allowed under CDCR policies and as applied to all inmates; this includes allowing Mr. Rouser to have his Wiccan Bible while he is in Administrative Segregation;

(2)  that defendants allow Mr. Rouser to obtain the group Wiccan items prior to Wiccan group services;

(3)  that defendants cannot take and/or destroy Mr. Rouser's approved religious articles;

(4)  that defendants provide a means for Mr. Rouser to order and receive religious items;

(5)  that defendants announce Wiccan services to the same extent they announce services for the main stream faiths (i.e., Catholic, Protestant, Jewish, Muslim, and

Native American).

(6)　that when Wiccan services are scheduled, defendants must allow Mr. Rouser to access the outdoor, nature-based religious area for group services for the entire scheduled time, unless the Yard is on modified program and no religious group is allowed to meet that day; and

(7)　that defendants grant Mr. Rouser access to the fire pit adjacent to the Native American sweat lodge during religious services.

The court further orders that plaintiff shall not be required to post bond.

IT IS SO ORDERED.

DATED: April 15, 2010.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT